# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1183
_____

Jamie Smith

*Plaintiff - Appellee*

v.

AS America, Inc., doing business as American Standard Brands

*Defendant - Appellant*

_____

No. 15-1665
_____

Jamie Smith

*Plaintiff - Appellant*

v.

AS America, Inc., doing business as American Standard Brands

*Defendant - Appellee*

_____

No. 15-1832
_____

Jamie Smith

*Plaintiff - Appellee*

Appellate Case: 15-1183    Page: 1    Date Filed: 07/14/2016 Entry ID: 4425897

v.

AS America, Inc., doing business as American Standard Brands

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Western District of Missouri - Joplin

_____

Submitted: December 17, 2015
Filed: July 14, 2016

_____

Before MURPHY, BENTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

AS America, Inc. d/b/a American Standard Brands (ASB) denied Thomas Smith's request for intermittent Federal Medical Leave Act (FMLA) leave and fired him after he missed work. Following a bench trial, the district court found ASB violated Smith's rights under the FMLA and awarded Smith actual and liquidated damages, attorney's fees, expenses, and prejudgment interest. ASB appeals the court's decision regarding liability and its awards of liquidated damages and attorney's fees.[1] Jamie Smith[2] cross-appeals the district court's finding limiting the

---

[1]ASB also appeals the court's May 12, 2015, order denying its April 13, 2015, post-trial motion for reconsideration, or in the alternative, motion to amend the court's order granting attorney's fees, expenses, and pretrial interest, and altering its factual finding regarding Thomas Smith's probate case. ASB makes no meaningful

amount of her damages under the after-acquired evidence doctrine. Having jurisdiction under 28 U.S.C. § 1291, we affirm the district court's decision regarding liability, liquidated damages, and attorney's fees. Because we find the district court made a clearly erroneous factual finding as to ASB under the after-acquired evidence doctrine, however, we reverse and remand the court's decision limiting damages.

## I. Background

Thomas Smith worked at the ASB plant in Nevada, Missouri. His job required him to manually lift porcelain toilet bowls, tanks, urinals, and sinks on and off the kiln and refire carts. The bowls weighed an average of fifty pounds and the tanks weighed around twenty-five pounds. His shift ran from 11:00 p.m. to 7:00 a.m. Friday through Tuesday, and he was off on Wednesdays and Thursdays. ASB employees are fired when they reach 8 absences in a twelve-month period under ASB's no-fault attendance policy.

In January 2011, Smith missed three days of work due to sinusitis and lower back pain. He went to an urgent care clinic and was prescribed muscle relaxants and advised to get physical therapy. Smith applied for FMLA leave and submitted a certification form that had been completed by a nurse practioner at the clinic. Smith's

---

argument regarding its appeal of the court's May 12, 2015 order in its opening or reply briefs and so we deem the claim waived. Jenkins v. Winter, 540 F.3d 742, 751 (8th Cir. 2008).

[2]Thomas Smith died in a car accident on March 3, 2014. His wife, Jamie, as the personal representative of his estate, was substituted as the plaintiff in the FMLA lawsuit on July 7, 2014.

-3-

Appellate Case: 15-1183    Page: 3    Date Filed: 07/14/2016 Entry ID: 4425897

absentee records for January 9 through 11 contain a notation "FMLA per C. Morris"[3] and his absence was recorded as FMLA leave.

On Friday, February 5, 2011, before his shift started, Smith hurt his back plowing snow. That night, he reported to work but left early due to back pain. On Saturday, February 6, and Sunday, February 7, Smith called ASB to report he could not work but that his absence should be covered by the intermittent FMLA leave granted in January.

Smith went to the urgent care clinic on Monday, February 7, and saw a nurse practitioner. He was advised to take anti-inflammatory drugs and the muscle relaxants he had been prescribed in January and to get physical therapy. He was also given a note from the nurse practioner to submit to ASB. The note stated: "Patient seen in clinic 2/7/11. Please excuse from 2/8/11 & needs FMLA form to be completed for lumbar strain." Smith called ASB before his next shift started to report that he would be absent and that the absence should be covered by the intermittent FMLA leave approved in January.

On Tuesday, February 8, 2011, Smith went to the ASB plant to submit the note from the nurse practioner. Jackie Nall[4] met with him and gave him documents assessing him three points for leaving his February 6 shift early and missing his February 7 and 8 shifts. She also gave him a document dated February 8, 2011, that purportedly denied his January request for FMLA leave. ASB then fired Smith for having 8 absences.

---

[3]Chris Morris was the Human Resources Generalist responsible for administering FMLA at the Nevada plant in January 2011.

[4]Jackie Nall had replaced Morris as the Human Resources Generalist at the Nevada plant.

On February 11, 2011, Smith submitted a new application for FMLA leave and an FMLA certification form filled out by the clinic nurse practitioner. The certification form noted Smith had been prescribed muscle relaxants for a thoracolumbar spasm and referred for physical therapy. ASB did not request any additional information from Smith concerning his February 11 FMLA application but did not grant him FMLA leave and did not reinstate him. Smith then sued ASB, claiming wrongful interference with his FMLA rights.

At Thomas Smith's deposition, ASB learned that he had been arrested and jailed on July 13, 2011. The parties disputed when Smith was released from jail and how many absences he would have accrued as a result of being jailed had he still been employed at ASB. Following trial, the court found ASB proved that Smith had not been released from jail until July 20, 2011, and thus would have reached 8 absences on July 20, 2011. The court awarded Jamie Smith $13,865.84 in lost pay up to July 20, 2011, and $13,865.84 in liquidated damages. The court also granted Smith $159,944.66 in attorney's fees and costs.

## II. Discussion

The FMLA entitles an eligible employee to twelve weeks of unpaid leave during any twelve-month period for a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). To succeed on a claim of FMLA interference, an employee must show she was eligible for FMLA leave, the employer knew she needed FMLA leave, and the employer denied her an FMLA benefit to which she was entitled. Hasenwinkel v. Mosaic, 809 F.3d 427, 432 (8th Cir. 2015). FMLA interference includes "refusing to authorize FMLA leave." Stallings v. Hussman Corp., 447 F.3d 1041, 1050 (8th Cir. 2006) (quoting 29 C.F.R. § 825.220(b)).

### A. ASB Appeal

ASB asserts the district court erred in finding Smith qualified for FMLA leave because Thomas did not have a "serious health condition" within the meaning of the FMLA. Whether an employee has a serious health condition is a mixed question of fact and law. Thorson v. Gemini, Inc., 205 F.3d 370, 377 (8th Cir. 2000). Following a bench trial, we review a district court's findings of fact for clear error and its legal conclusions de novo. Schaub v. VonWald, 638 F.3d 905, 923 (8th Cir. 2011); see also Fed. R. Civ. P. 52(a). "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Id. (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985)). We may not reverse the district court's findings of fact simply because we would have decided the case differently. Id. If the evidence could lead to two plausible conclusions, the district court's choice between them cannot be clearly erroneous. Id.

The FMLA defines "'serious health condition' as 'an illness, injury, impairment or physical or mental condition that involves' inpatient care or 'continuing treatment by a health care provider.'" Dalton v. ManorCare of W. Des Moines IA, LLC, 782 F.3d 955, 960 (8th Cir. 2015) (quoting 29 U.S.C. § 2611(11)). While the FMLA statute does not further define "continuing treatment," the Department of Labor's regulations' definition of "continuing treatment" includes "chronic conditions" and periods of "incapacity and treatment." 29 C.F.R. §§ 825.115(a), 825.115(c). "We have previously observed that although conditions like the common cold or the flu will not routinely satisfy the requirements of a 'serious health condition,' absences resulting from such illnesses are protected under FMLA when the regulatory tests are met." Rankin v. Seagate Techs., Inc., 246 F.3d 1145, 1147 (8th Cir. 2001) (citing Thorson, 205 F.3d at 379).

-6-

Appellate Case: 15-1183     Page: 6     Date Filed: 07/14/2016 Entry ID: 4425897

The district court found Smith's February absences met the objective regulatory tests for both a chronic condition and a period of incapacity and treatment. The FMLA regulations define a chronic condition as one that "(1) [r]equires periodic visits (defined as at least twice a year) for treatment by a health care provider," (2) "[c]ontinues over an extended period of time (including recurring episodes of a single underlying condition)," and (3) "[m]ay cause episodic rather than a continuing period of incapacity (e.g., asthma . . . etc.)." 29 C.F.R. § 825.115(c). ASB concedes both certification forms Smith submitted in January and February 2011 track the language of 29 C.F.R. § 825.115(c), but argues that Smith's back pain cannot be considered a chronic condition because his two visits to the urgent care clinic were the only two times he ever sought medical treatment for his back.

"[The] operative time for determining whether a particular condition qualifies as a serious health condition is the time that leave is requested or taken." See Hansler v. Lehigh Valley Hosp. Network, 798 F.3d 149, 156 (3d Cir. 2015) (citing Navarro v. Pfizer Corp., 261 F.3d 90, 96 (1st Cir. 2001)). "There is no requirement in the statute that an employee be diagnosed with a serious health condition before becoming eligible for FMLA leave." Stekloff v. St. John's Mercy Health Sys., 218 F.3d 858, 863 (8th Cir. 2000). In fact, the regulations allow FMLA leave for a chronic condition even when the employee "does not receive treatment from a health care provider during the absence," such as when an asthmatic person is unable to report to work because of an asthma attack. Id. (quoting 29 C.F.R. § 825.115(f)). The FMLA regulations for a chronic condition require only two visits per year to a health care provider for treatment. 29 C.F.R. § 825.115(c)(1). The record shows Smith had two visits to the urgent care clinic for lower back pain. That Smith did not seek medical treatment for lower back pain before January 2011 or after being fired by ASB is not conclusive of whether Smith's lower back pain qualified as a chronic condition in February 2011. We cannot say the district court clearly erred in its factual determination that, at the time ASB fired him, Smith's back condition met the

-7-

objective criteria of a chronic condition.[5] See Thorson, 205 F.3d at 377 ("Once the fact-finder has affirmatively found the necessary facts, the conclusion that a plaintiff had a 'serious health condition' is inescapable as a matter of law.").

ASB next argues the district court abused its discretion in awarding liquidated damages because Smith did not show ASB willfully violated the statute. We review an award of liquidated damages for an abuse of discretion. Marez v. Saint-Gobain Containers, Inc., 688 F.3d 958, 964 (8th Cir. 2012). The FMLA statute states that an employer who violates the FMLA "*shall* be liable to any eligible employee affected" for lost wages, interest, and "an additional amount of liquidated damages equal to the sum of the amount" of lost wages and interest. Id. (quoting 29 U.S.C. § 2617(a)(1)(A)(iii)) (emphasis added). An employer may avoid a liquidated damages award if it can show, to the court's satisfaction, that it "acted with subjective good faith and that it had an objectively reasonable belief that its conduct did not violate the law." Jackson v. City of Hot Springs, 751 F.3d 855, 866 (8th Cir. 2014). However, a court retains the discretion to award liquidated damages even when an employer shows it acted in good faith and "should exercise its discretion consistently with the strong presumption under the statute in favor of doubling." Id. at 866 (quoting Hite v. Vermeer Mfg. Co., 446 F.3d 858, 868–69 (8th Cir. 2006)).

Contrary to ASB's claim, the FMLA statute does not require an employee to show that an employer willfully violated the statute in order to receive liquidated damages. Rather, liquidated damages are mandatory unless the employer meets its

---

[5]The district court also found that Smith's February 2011 absences qualified for FMLA leave as a period of incapacity and treatment. See 29 C.F.R. § 825.115(a) ("period[s] of incapacity of more than three consecutive, full calendar days, and any subsequent treatment relating to the same condition"). Because we affirm the court's conclusion that Smith was entitled to FMLA leave because his back condition qualified as a chronic condition, we need not address whether his back condition met the requirements to qualify for FMLA leave for incapacity and treatment.

Appellate Case: 15-1183     Page: 8     Date Filed: 07/14/2016 Entry ID: 4425897

burden to show the good faith exception applies. Thorson, 205 F.3d at 383 (explaining exception to the "otherwise mandatory call for liquidated damages"). Here, the district court rejected ASB's claim that it acted in good faith in firing Smith, pointing to ASB's attempt in February to rescind the FMLA leave it had granted in January. The court found ASB knew Smith was attempting to take FMLA leave, but fired him before it even received, let alone reviewed, Smith's application for FMLA leave. The district court acted well within its discretion in awarding liquidated damages to Smith.

ASB next challenges the court's award of attorney's fees. "The FMLA provides for reasonable attorney's fees to be awarded to a prevailing plaintiff." Marez, 688 F.3d at 965 (citing 29 U.S.C. § 2617(a)(3)). These fees are "in addition to any judgment awarded to the plaintiff." 29 U.S.C. § 2617(a)(3). We review an award of attorney's fees for an abuse of discretion. Marez, 688 F.3d at 965. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). After determining this amount, a district court may consider other factors to "adjust the fee upward or downward, including the important factor of the 'results obtained.'" Marez, 688 F.3d at 965 (quoting Hensley, 461 U.S. at 434).

ASB raises a number of challenges to the award of attorney's fees. ASB first argues Smith is not entitled to attorney's fees at all because she did not disclose the amount of the fees requested in her response to discovery requests. ASB asserts this violated Federal Rule of Civil Procedure 26(a)[6] and that, pursuant to Federal Rule of

---

[6] Rule 26(a) requires a party to provide "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii).

-9-

Civil Procedure 37(c)(1),[7] the district should have excluded evidence of the amount of attorney's fees as a sanction. We review a district court's decision not to exclude evidence under Rule 37(c)(1) for an abuse of discretion. United States v. STABL, Inc., 800 F.3d 476, 487 (8th Cir. 2015).

The district court did not abuse its discretion in declining to exclude any evidence of Smith's attorney's fees. A computation of attorney's fees is simply not a required disclosure under Federal Rule of Civil Procedure 26(a). As the court correctly noted, information regarding the amount of attorney's fees requested had nothing to do with the merits of the FMLA lawsuit. See Young v. Powell, 729 F.2d 563, 566 (8th Cir. 1984) (holding that a claim for attorney's fees is an issue "uniquely separable from the cause of action to be proved at trial"). "Regardless of when attorney's fees are requested, the court's decision of entitlement to fees will therefore require an inquiry separate from the decision on the merits—an inquiry that cannot even commence until one party has 'prevailed.'" Id. (quoting White v. New Hampshire Dep't. of Emp't Sec., 455 U.S. 445, 451–52 (1984)).

ASB next argues that Smith should be judicially estopped from claiming more than $13,268.32 in attorney's fees based on Jamie Smith's valuation of the lawsuit in probate court. In opening Thomas Smith's estate, Jamie Smith represented to the probate court that the FMLA lawsuit—the estate's only asset—was worth $41,000. "We review the district court's underlying application of judicial estoppel for an abuse of discretion." Jones v. Bob Evans Farms, Inc., 811 F.3d 1030, 1032 (8th Cir. 2016). We affirm "unless it plainly appears that the court committed a clear error of judgment in the conclusion it reached upon a weighing of the proper factors." Id. (quoting Stallings v. Hussmann Corp., 447 F.3d 1041, 1046–47 (8th Cir. 2006)).

---

[7]Rule 37(c)(1) provides: "If a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

-10-

Judicial estoppel is an equitable doctrine that "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749 (2001). In determining whether the doctrine should apply, courts are to consider three factors: (1) whether the party's later position is "clearly inconsistent" with its prior position; (2) whether a court was persuaded to accept a prior position "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) whether the party claiming inconsistent positions "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 750 (internal quotation marks omitted).

ASB contends the court erred in its judicial estoppel analysis because Smith's valuation of the lawsuit in the probate filing was "clearly inconsistent" with her later request for attorney's fees in district court. As the district court noted, it is questionable whether there is, in fact, any inconsistency between the earlier valuation and the later request. But even so, ASB offered no evidence to show that the probate filing was a purposely inaccurate document that misled either court or led to an unfair advantage or an unfair detriment to either party. See Stallings, 447 F.3d at 1049 (noting judicial estoppel does not apply when a party's prior position was a good faith mistake and not part of a scheme to mislead the court). And ASB offered no evidence to show that the probate filing in any way affected "the integrity of the judicial process." E.E.O.C. v. CRST Van Expedited, Inc., 679 F.3d 657, 679 (8th Cir. 2012) (quoting Stallings, 447 F.3d at 1047) (noting that the doctrine "protects the integrity of the judicial process"). The district court did not abuse its discretion in declining to apply judicial estoppel to the facts of this case.

ASB further asserts the district court abused its discretion in declining to limit the award of attorney's fees to fees incurred after Thomas Smith's death because Jamie Smith's attorney did not file a creditor's claim in Thomas Smith's probate

-11-

proceeding. According to ASB, under Missouri law, any claim against an estate or the personal representative of the estate, including a claim for attorney's fees and costs, must be filed in Missouri's probate courts. See Mo. Rev. Stat. § 473.360 (barring claims against the estate, the personal representative, the heirs, devisees, and legatees of a decedent that are not filed with the probate court within six months of published notice); § 473.444 (barring all claims against the estate, the personal representative, the heirs, devisees, and legatees of a decedent one year following date of decedent's death whether or not claimant given any notice). Because Smith's counsel failed to file a creditor's claim for the fees and expenses incurred through Smith's death on March 3, 2014, ASB asserts, those claims are now extinguished as a matter of law. ASB asserts the district court abused its discretion by awarding $96,562.50 in attorney's fees and costs that are no longer recoverable under Missouri law. Whether Smith's attorney can file a claim against Thomas Smith's estate or against Jamie Smith (as the estate's personal representative) in probate court, however, has no bearing on the amount of attorney's fees ASB must pay Jamie Smith as the prevailing plaintiff in this federal lawsuit. The district court did not abuse its discretion in not limiting Smith's attorney's fees to only those incurred after Thomas's death.[8]

---

[8]ASB further argues the fees should be reduced because Smith's attorney put in an unreasonable number of hours in litigating the case and because the amount of attorney's fees is disproportionate to the amount of damages awarded. We have "explicitly rejected a 'rule of proportionality' in civil rights cases because tying the attorney's fees to the amount awarded would discourage litigants with small amounts of damages from pursuing a civil rights claim in court." Simpson v. Merchants & Planters Bank, 441 F.3d 572, 581 (8th Cir. 2006) (quoting Jackson v. Crews, 873 F.2d 1105, 1110 (8th Cir. 1989)). The district court did not abuse its discretion.

Appellate Case: 15-1183     Page: 12     Date Filed: 07/14/2016 Entry ID: 4425897

## B. Smith Cross-Appeal

Smith cross-appeals the district court's application of the after-acquired evidence doctrine to limit her damages. The after-acquired evidence doctrine applies when an employee is fired for an unlawful reason but the employer later learns of other conduct that, by itself, would have resulted in discharge had it come to the employer's attention, and it limits the employee's damages to the period of time "from the date of the unlawful discharge to the date the new information was discovered." McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 362 (1995). It is the employer's burden to prove that it would have fired the employee upon discovery of the evidence. E.E.O.C. v. Dial Corp., 469 F.3d 735, 745 (8th Cir. 2006). The employer must show "that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it." McKennon, 413 U.S. at 362–63. Here, the district court found Thomas Smith was jailed until July 20, 2011, and ASB would have fired him for missing 8 days of work in a twelve-month period under its no-fault attendance policy. Smith contends the district court clearly erred in finding that Thomas Smith was not released from jail until July 20, 2011.

In finding that Thomas Smith was not released until July 20, 2011, the district court relied on Jamie Smith's testimony about Exhibit D-22, an exhibit ASB asserts are court records. Because the court found Exhibit D-22 was not properly authenticated, however, the court did not admit the exhibit. Referring to Exhibit D-22, ASB's attorney asked Jamie Smith: "Am I reading it right? Bond—surety bond posted on July 20, 2011?" Jamie Smith testified: "Yes, it does state that." The parties then entered into the following stipulation: "The parties further agree and stipulate that D-22 is withdrawn, and all copies of D-22 will be sealed and/or returned to plaintiff. Plaintiff Jamie Smith's testimony relating to the dates of Mr. Smith's incarceration in July of 2011 is admissible." The district court acknowledged that Smith "presented evidence that Mr. Smith acquired the money for bond on July 19

-13-

and was released on July 19"—Exhibit P-48[9]—but found that "a contemporaneously prepared court record is entitled to more weight than Ms. Smith's memory of the event, particularly in light of the very technical nature of the information, making it less likely to be accurately remembered years later." Smith v. AS Am., Inc., 85 F.Supp.3d 1046, 1057 (W.D. Mo. 2015).

Neither party disputes it was ASB's burden to prove it would have fired Thomas Smith based on the number of absences he would have accrued from being jailed. The only evidence in the record regarding the dates of Thomas Smith's detention in jail that either party points us to is Exhibit P-48 and Jamie Smith's testimony about both that exhibit and ASB's Exhibit D-22. The parties did stipulate that "Plaintiff Jamie Smith's testimony relating to the dates of Mr. Smith's incarceration in July of 2011 is admissible." The court then characterized Jamie Smith's testimony about Exhibit D-22 as being based on a "contemporaneously prepared court record." But her testimony was less than clear about what information Exhibit D-22 offered, because there is nothing in Jamie Smith's testimony or elsewhere that explains what is meant by a "surety bond" being "posted." For example, we can find no evidence in the record that a surety bond is posted on the same day an inmate is released, either in the county where Thomas Smith was detained or as a general matter. The court gave Jamie Smith's limited testimony about Exhibit D-22 "more weight than Ms. Smith's memory of the event" and overlooked the fact that no one had defined the key terms on that exhibit. The court also gave the testimony about Exhibit D-22, a withdrawn exhibit, more weight than Exhibit P-48, an admitted exhibit. Exhibit P-48, in combination with other portions of Jamie Smith's testimony, placed Thomas Smith's release date as one day prior on July 19, 2011. Under these circumstances, we conclude that the district court's

---

[9]When asked what Exhibit P-48 was, Jamie Smith testified: "That would be the form that we had to fill out when I bonded him out." She further testified she signed the form on the date that Thomas Smith was released and that the date on the form was July 19, 2011.

-14-

Appellate Case: 15-1183     Page: 14     Date Filed: 07/14/2016 Entry ID: 4425897

finding that ASB met its burden to prove that Thomas Smith was released from jail on July 20, 2011, was clearly erroneous. See Dial Corp., 469 F.3d at 745 (remanding on issue of back pay because employer did not meet its burden of proving employee would have been fired based on the after acquired-evidence doctrine).

    For the reasons stated, the judgment of the district court on ASB's after-acquired evidence defense is vacated and we remand this case for further proceedings consistent with this opinion.

_____

-15-

Appellate Case: 15-1183     Page: 15     Date Filed: 07/14/2016 Entry ID: 4425897